## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MONTANA

| | |
|---|---|
| **IN RE:**<br><br>**SHOOT THE MOON, LLC,**<br><br>　　**Debtor.** | **Case No. 15-60979-TLM** |
| **JEREMIAH J. FOSTER,  as trustee for the chapter 11 estate of SHOOT THE MOON, LLC,**<br><br>　　**Plaintiff,**<br><br>**v.**<br><br>**IOU CENTRAL, INC., a Georgia corporation, and JOHN DOES 1-10,**<br><br>　　**Defendant.** | **Adv. No. 17-00060-TLM** |

## MEMORANDUM OF DECISION

Before the Court is a Civil Rule 12(b) motion filed by IOU Central, Inc. ("Defendant"), seeking to dismiss this adversary proceeding brought by chapter 11 trustee, Jeremiah Foster ("Trustee").[1]  Trustee argues Defendant waived its defenses by not raising them in a Civil Rule 12(b) motion before serving its answer to the initial

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, Rule citations are to the Federal Rules of Bankruptcy Procedure, and Civil Rule citations are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

complaint, and that Defendant has not met its burden under Civil Rule 12(b).  On April 22, 2020, the matter was heard telephonically, and the parties delivered oral argument, after which the matter was taken under advisement.  After consideration of the parties' written and oral submissions, the Court reaches the following conclusions.

## BACKGROUND

On October 21, 2015, Shoot the Moon, LLC ("Debtor"), filed its chapter 11 petition.  Shortly before filing its petition, Debtor allegedly completed a merger of nineteen entities, through which Debtor became the sole surviving entity.[2]  Doc. No. 66 at 3.  Trustee identifies four of these merged entities as being relevant to this adversary: Shoot the Moon of Idaho, LLC, Shoot the Moon 22, LLC, Shoot the Moon II, LLC, and Shoot the Moon III, LLC.  *Id.*

On October 19, 2017, Trustee filed his complaint primarily seeking avoidance and recovery of transfers made to Defendant under §§ 547, 548, and 550 and various states' fraudulent transfer laws.  Doc. No. 1 ("Initial Complaint").  Almost a year later, on September 27, 2018, Defendant filed an answer to the Initial Complaint.[3]  Doc. No. 54.  Defendant had not filed a Civil Rule 12(b) motion prior to filing its answer.  However, Defendant raised several affirmative defenses including those defined in Civil Rule 12(b) in its answer.  *Id.* at 18–24.  Specifically, Defendant raised the Civil Rule 12(b) defenses

---

[2] Defendant's arguments accept the existence of such merger but contest its effect in connection with Trustee's litigation claims.

[3] The deadline for Defendant to respond to the Initial Complaint was extended to September 28, 2018, pursuant to multiple stipulations between Trustee and Defendant, Doc. Nos. 10, 13, 17, 21, 28, 37, and 48, and this Court's orders granting the same, Doc. Nos. 11, 14, 19, 23, 31, 40, and 50.

of lack of subject matter jurisdiction and improper venue.[4]  *Id.* at 19.  Defendant did not raise a defense under Civil Rule 12(b)(6).

On October 30, 2019, pursuant to the parties' stipulation, Doc. No. 64, and this Court's order, Doc. No. 65, Trustee filed his "First Amended Complaint," Doc. No. 66 ("FAC").  In the FAC, Trustee seeks avoidance and recovery of preferential transfers made to Defendant under §§ 547 and 550.  Doc. No. 65.  In addition, Trustee seeks declaratory judgments under 28 U.S.C. § 2201, first, as to choice of law and, second, determining that certain contracts between Debtor and Defendant are loan agreements. *Id.*  Further, Trustee seeks heightened damages for usurious interest under Montana's usury laws (Mont. Code Ann. §§ 31-1-107 and 31-1-108).  *Id.*  Overall, Trustee's FAC narrows the legal issues raised in the Initial Complaint and adds more factual allegations.

On January 7, 2020, Defendant filed its motion to dismiss,[5] which seeks to dismiss the FAC under Civil Rule 12(b)(1), (3), and (6).[6]  Doc. No. 84 (the "Motion").  On March 19, 2020, Trustee filed "Trustee's Response Brief in Opposition to Defendant IOU Central, Inc.'s Motion to Dismiss," in which he addresses the merits of the Motion and argues Defendant waived its 12(b) defenses.  Doc. No. 98 ("Trustee's Objection").

---

[4] The former falls under Civil Rule 12(b)(1) and the latter under Civil Rule 12(b)(3).

[5] Even after another series of stipulations and orders extending time to respond to the FAC, Defendant filed its motion to dismiss a day after the last day for filing.  To remedy this issue, the parties stipulated to allow the Court to accept the untimely motion, and the Court accepted the late filed motion. Doc. Nos.  86–87.

[6] Defendant does not cite directly to the enumerated defenses in Civil Rule 12, but it is clear from the arguments which defenses are being urged.  Further, Trustee acknowledges that these are the defenses raised.  Doc. No. 98 at 2.

Defendant responded to Trustee's Objection by filing "Defendant's Reply to Trustee's Response to Motion to Dismiss" on April 2, 2020.  Doc. No 99 ("Defendant's Reply").

## ANALYSIS

### A.   Waiver of Civil Rule 12(b) Defenses

Before reaching the merits of the Motion, this Court must consider whether the Motion is properly before the Court.  Trustee contends the Motion must be denied because IOU waived Civil Rule 12(b) defenses by not asserting those defenses in response to the Initial Complaint.  Doc. No. 98 at 5.  Rule 7012(b) adopts Civil Rule 12(b).  Civil Rule 12(b) provides: "Every defense to a claim for relief in any pleading must be asserted in the *responsive pleading* if one is required.  But a party *may* assert the following defenses by motion: (1) lack of subject-matter jurisdiction; . . . (3) improper venue; . . . (6) failure to state a claim upon which relief can be granted[.]"  *Id.* (emphasis added).

Civil Rule 12 continues on: "A party waives any defense listed in Rule 12(b)(2)– (5) . . . by . . . failing to . . . include it in a *responsive pleading* or in an amendment allowed by Rule 15(a)(1) as a matter of course."  Civil Rule 12(h)(1)(B)(ii) (emphasis added).  However, "Failure to state a claim upon which relief can be granted [(the defense defined in Civil Rule 12(b)(6))] may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."  Civil Rule 12(h)(2); *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 317–18 (2017) ("A defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense").  And, "[i]f the court determines at

any time that it lacks subject-matter jurisdiction [(the defense defined in Civil Rule 12(b)(1))], the court must dismiss the action."  Civil Rule 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 1785 (2002) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

Here, Defendant's Motion, filed after its original answer and before any responsive pleading to the FAC, invokes defenses under Civil Rule 12(b)(1), (3), and (6). Contrary to Trustee's assertions, Defendant raised the defenses of lack of subject matter jurisdiction and improper venue—Civil Rules 12(b)(1), (3)—in its answer to the Initial Complaint.  Doc. No. 54 at 19.  Further, at oral argument, Trustee conceded Defendant cannot and did not waive the defenses of lack of subject matter jurisdiction and failure to state a claim.  Thus, Defendant did not waive its defenses under Civil Rules 12(b)(1), (3), or (6).[7]

## B.    Merits of Motion

### 1.    Civil Rule 12(b)(1)—Subject Matter Jurisdiction and Standing

Defendant argues Trustee does not have standing to bring his claims, and this Court is, thus, without subject matter jurisdiction over this adversary proceeding.  Doc. No. 84 at 18–24.  The Ninth Circuit BAP addressed Civil Rule 12(b)(1) motions to

---

[7] Trustee appears to raise procedural concerns with Defendant's Motion as it was filed after Defendant answered the Initial Complaint.  Doc. No. 98 at 5.  This Court considered the procedural posture of the Motion, and determined that it may appropriately consider the merits of the Motion because the issues have not been waived and Defendant could bring its defenses under Civil Rule 12(c), which has the same standards as a motion under Civil Rule 12(b).  Wright & Miller, Fed. Prac. & Proc. § 1367 (3d ed. 1990 & Supp. 2020) (Judgment on the Pleadings—In General); *In re Apple iPhone Antitrust Litigation*, 846 F.3d at 317–20; *Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1028 n.1 (D. Haw. 2004). Thus, to expedite an already lengthy litigation, and in consideration of the rights of the litigants, the Court will consider the merits of the Motion under the standards of Civil Rule 12(b).

dismiss for lack of standing in *Foster v. Sligar (In re Foster)*, 2012 WL 6554718 (9th Cir.

BAP Dec. 14, 2012):

> Article III limits a federal court's subject matter jurisdiction by requiring that plaintiffs have standing. *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Id.* (citations omitted). Regardless of which type of standing is at issue, constitutional or prudential, both turn on whether the plaintiff can allege an "injury-in-fact" he or she suffered as a result of the defendant's alleged misconduct. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *Powers v. Ohio,* 499 U.S. 400, 410–11, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).
>
> Because standing pertains to a federal court's subject matter jurisdiction, a motion to dismiss for lack of standing is properly brought as a motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1). *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). When faced with a Civil Rule 12(b)(1) motion, the plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir. 1996).
>
> A challenge to subject matter jurisdiction may be facial or factual. *White,* 227 F.3d at 1242. Fosters' attack on the adversary complaint—that Briscoe lacked standing to bring it on Sligar's behalf—is a facial attack. *See In re Beach,* 447 B.R. 313, 317 (Bankr. D. Idaho 2011) (assertion that debtors lack standing to prosecute their claims is a facial subject matter jurisdiction attack); *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors,* 809 F. Supp. 2d 1084, 1089 (D. Ariz. 2011) (lack of standing is facial challenge). When the motion constitutes a *facial* attack, the court must presume the factual allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004).

*Id.* at *4.

Though a court must "accept all of the *factual* allegations in the complaint as true," it does "not accept *legal conclusions* in the complaint as true, even if 'cast in the form of factual allegations.'" *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir.

2014) (citing *Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir. 2009)).  Further, a court "may look beyond the complaint and consider extrinsic evidence."  *Id.* (quoting *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)).

Section 547(b) gives the trustee the authority to avoid preferential transfers. Section 550 grants the trustee authority to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."  Section 550(a).  A well-respected treatise on bankruptcy addresses the standing of an appointed or elected trustee: "Ordinarily, a trustee assumes the authority to bring preference actions immediately upon being appointed or, if elected, upon being elected."  5 Collier on Bankruptcy ¶ 547.11[1] at 547-103 (Richard Levin & Henry J. Sommer eds., 16th ed. rev. 2019).  Further, the bankruptcy trustee may bring other claims on behalf of the bankruptcy estate.  Section 323(a), (b); *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate.").

### a.    Anti-Assignment Provision

Defendant argues that any purported merger was made in violation of anti-assignment provisions in two of the four promissory notes between Debtor's predecessors and Defendant—the note between Defendant and Shoot the Moon 22, LLC, and the note

between Defendant and Shoot the Moon III, LLC.[8]  The promissory notes attached to the Motion contain identical anti-assignment provisions, which provide: "Borrower may not assign its obligations under this Note without Lender's written agreement."  Doc No. 84 at 19; *see also* Doc. Nos. 84-1 at 3, ¶ 21, and 84-2 at 3, ¶ 21.  The FAC asserts Debtor completed a direct merger where Shoot the Moon 22, LLC, and Shoot the Moon III, LLC, merged into Debtor and ceased to exist.  Doc. Nos. 66-2 and 66-4.

Defendant argues "IOU's notes were negotiated to establish its relationship with each borrower, protecting IOU from unpredictable liability with strangers to the notes, seeking to enforce them in other jurisdictions, under other laws, subjecting IOU to unexpected exposure, such as Plaintiff improperly seeks to do here."  Doc. No. 84 at 20–21.  The issue, more precisely stated, is whether the anti-assignment provisions in the promissory notes were triggered by the mergers, and, if so, whether such provisions prevent Trustee from asserting the rights that would have been held by Shoot the Moon 22, LLC and Shoot the Moon III, LLC.[9]

The present issue is somewhat complicated by the parties' competing positions regarding whether Georgia or Montana law governs these promissory notes.[10]  While

---

[8] Trustee alleges four promissory notes were executed between Defendant and Debtor's predecessors, but only two notes have been produced—both are attached to the Motion.  Doc. Nos. 84-1 and 84-2.  Thus, the Court only addresses the anti-assignment arguments with respect to these two notes.

[9] Defendant raises this issue in the context of the usury cause of action, but this analysis seemingly applies to any right arising out of the contractual arrangement—*i.e.* the right to avoid a preferential transfer on an antecedent debt stemming from a non-assignable promissory note.

[10] Trustee contends that Montana law governs the promissory notes since Shoot the Moon 22, LLC, and Shoot the Moon III, LLC, were Montana entities, while Defendant argues that the choice of law provisions in said notes require Georgia law to govern the notes.  The Court addresses the parties' choice of law arguments in the Civil Rule 12(b)(6) context *infra*.

neither jurisdiction has specifically held that a statutory merger triggers an anti-assignment clause, a merger has been held to be an "assignment by operation of law" or "transfer by operation of law" in other jurisdictions. *See e.g.*, *Tenneco Auto. Inc. v. El Paso Corp.*, No. CIV.A. 18810-NC, 2002 WL 453930, at *2 (Del. Ch. Mar. 20, 2002) ("As a general matter in the corporate context, the phrase 'assignment by operation of law' would be commonly understood to include a merger.  Indeed, the Delaware Supreme Court has equated an 'assignment by operation of law' with a merger.[]  Furthermore, this Court has suggested that the phrase "transfer by operation of law" would, again in the corporate context, be understood to include a merger.").

The U.S. District Court for the Northern District of Georgia concluded that a merger that is considered an "assignment by operation of law" does not violate a generally worded anti-assignment clause.  *Subcontracting Concepts, LLC v. Creative Ins. Managers, Inc.*, 2014 WL 12013431, *2–3 (N.D. Ga. Jan. 3, 2014) (holding that words like "assignment" and "transfer" do not necessarily include "assignment by operation of law," so a merger does not violate an anti-assignment provision that does not specifically bar assignments by operation of law).  The decision in *Subcontracting Concepts* is consistent with Georgia state case law which applies the Restatement (Second) of Contracts § 322 approach to interpreting anti-assignment clauses.  *McLarens Young Int'l, Inc. v. Am. Safety Cas. Ins. Co.*, 780 S.E.2d 464, 467 (Ga. App. Ct. 2015).  The Restatement (Second) of Contracts § 322(1) provides: "Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition."

Montana has taken a different approach to interpreting generally worded anti-assignment clauses.  The Montana Supreme Court stated:

> [I]t has long been the law of this state established in 1912 by the case of *Winslow v. Dundom*, 46 Mont. 71, 82, 125 P. 136, that provisions for nonassignment in a contract will be upheld.  The key case, *Standard Sewing-Machine Co. v. Smith*, 51 Mont. 245, 248, 152 P. 38, holds that nonconsent to assignment (where nonassignability is set forth in the contract) destroys or precludes the establishment of privity between an alleged assignee and the other party.

The Court in *Winslow* said:

> While the rule is uniform that a person may contract with whom he pleases and may refuse to contract with any particular person, still the rule is equally well settled, as stated in 4 Cyc. 20, as follows: 'As to assignability of private contracts, it may be stated as a general rule that rights arising out of agreements of contracts between private individuals *may be assigned, in the absence of any provision or stipulation in the agreement or contract to the contrary.*'  Certain well-recognized exceptions to that rule arise in case the right is coupled with a liability, or the contract involves the relation of personal confidence, or the contract is for personal services; and the reason for these exceptions is apparent at once.

*Rother-Gallagher v. Montana Power Co.,* 522 P.2d 1226, 1228 (Mont. 1974) (emphasis added).

Here, any distinction between Montana and Georgia law is immaterial because the anti-assignment provisions in the promissory notes at issue are not generally worded prohibitions on assignment.  Rather, the provisions narrowly exclude only the assignment of the **obligations** of Shoot the Moon 22, LLC, and Shoot the Moon III, LLC.  Nowhere in these promissory notes is Shoot the Moon 22, LLC, or Shoot the Moon III, LLC, prohibited from assigning their **rights** under the contracts.  Even under Montana's

MEMORANDUM OF DECISION - 10

approach to anti-assignment provisions, rights are generally assignable unless the contract provides otherwise or an exception applies. *Rother-Gallagher*, 522 P.2d at 1228 (quoting *Winslow*, 125 P. at 139). And, the right to avoid a preferential transfer or challenge allegedly usurious interest rates does not fall into the enumerated exceptions cited in *Rother-Gallagher*. *See id*.

Therefore, the anti-assignment provisions in the promissory notes executed by Defendant, Shoot the Moon 22, LLC, and Shoot the Moon III, LLC, did not prohibit transfer of the rights of Shoot the Moon 22, LLC, and Shoot the Moon III, LLC, to Debtor via the merger; and, thus, Trustee's standing is not defeated by these anti-assignment provisions.

### b.  Antecedent Debt and Merger

Defendant also contends Trustee is without standing because the alleged preferential transfers were made by Debtor's predecessors for debts on which Debtor only became liable upon completion of the merger. Defendant supports this argument by relying on *Robert L. Dawson Farms, LLC v. Meherrin Agric. & Chem. Co. (In re Robert L. Dawson Farms, LLC)*, 2019 WL 2366418 (Bankr. E.D.N.C. May 20, 2019). In *Dawson Farms*, the court considered "whether a debtor which is the surviving entity to a pre-petition corporate merger may avoid as preferential a transfer made by a merged company prior to the merger." *Dawson Farms*, 2019 WL 2366418, at *1. That court concluded that the surviving entity debtor could not avoid such a transfer, reasoning that the transfer could not have been made on behalf of an antecedent debt since the surviving entity only became liable upon the effective date of the merger. *Id.* at *6 (quoting

MEMORANDUM OF DECISION - 11

*Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 47 (Bankr. S.D.N.Y. 2006) ("Section 547(b) is grammatically structured such that 'antecedent' modifies 'debt', and the compound concept 'antecedent debt' is in turn modified by the phrase 'owed by the debtor before the transfer was made.'"); quoting *Morrison v. Champion Credit Corp. (In re Barefoot)*, 952 F.2d 795, 799 (4th Cir. 1991) ("[A] debt is incurred when a debtor first becomes legally bound to pay.")).

The Court has carefully considered *Dawson Farms*, and "while this Court respects the thoughtful decisions of its fellow bankruptcy courts, such decisions are not binding on it." *Richardson v. Cox (In re Cox)*, 462 B.R. 746, 758 n.19 (Bankr. D. Idaho 2011) (declining to follow *Aviva Life Ins. Co. v. Burton (In re Burton)*, 2009 WL 537163 (Bankr. E.D. Tenn. Feb. 20, 2009)) (citing generally *In re DeBoer*, 99.3 I.B.C.R. 101, 1999 WL 33486710 (Bankr. D. Idaho 1999)). The analysis of that court holds some facial appeal. However, the merger statutes under which the applicable entities were merged into Debtor[11] support the conclusion that Debtor, as the surviving entity, would be able to assert the rights of the merged entities.

Montana Code Ann. § 35-8-1203 provides:

(1) When a merger takes effect:

> (a) the separate existence of each limited liability company and other entity that are a party to the merger, other than the surviving entity, terminates;

---

[11] Shoot the Moon 22, LLC, Shoot the Moon II, LLC, and Shoot the Moon III, LLC, were allegedly Montana entities and merged into Debtor under Mont. Code Ann. § 35-8-1202. Doc. Nos. 66-2, 66-3, 66-4. Shoot the Moon of Idaho, LLC, was allegedly an Idaho entity and merged under Idaho Code § 30-22-205. Doc. No. 66-1.

MEMORANDUM OF DECISION - 12

(b) all property owned by each of the limited liability companies and other entities that are a party to the merger vests in the surviving entity;

(c) all debts, liabilities, and other obligations of each limited liability company and other entity that are a party to the merger become the obligations of the surviving entity;

(d) an action or proceeding pending by or against a limited liability company or other entity that is a party to a merger may be continued as if the merger had not occurred or the surviving entity may be substituted as a party to the action or proceeding; and

(e) except as prohibited by other law, all the rights, privileges, immunities, powers, and purposes of every limited liability company and other entity that are a party to a merger vest in the surviving entity.

Similarly, Idaho Code § 30-22-206 provides:

(a) When a merger under this part becomes effective:

(1) The surviving entity continues or comes into existence;

(2) Each merging entity that is not the surviving entity ceases to exist;

(3) All property of each merging entity vests in the surviving entity without transfer, reversion or impairment;

(4) All debts, obligations and other liabilities of each merging entity are debts, obligations and other liabilities of the surviving entity;

(5) Except as otherwise provided by law or the plan of merger, all the rights, privileges, immunities, powers and purposes of each merging entity vest in the surviving entity[.]

Under these provisions, the surviving entity steps into the shoes of the merging entities, and is vested with all the "rights, privileges, immunities, powers and purposes" of the merged entities. Thus, if the merged entities maintained the right to avoid a

MEMORANDUM OF DECISION - 13

transfer as preferential, the surviving entity would be vested with that same right upon merger under either of these statutes.  In addition, if the merged entities could pursue a claim of usury under Montana law, so too would the surviving entity.  Upon merger, all the rights of the merged entities vested in Debtor, and it could pursue such rights.  This is true even if Debtor did not exist until after the debts arose and after the transfers were made.  Thus, given the purpose and effect of a merger, and despite *Dawson Farms*, this Court concludes Defendant's Motion regarding Trustee's standing under §§ 323, 547, and 550 will be denied.

###    2.    Civil Rule 12(b)(3)—Venue

Defendant contends Trustee brought this proceeding in an inappropriate venue because its agreements with Debtor's predecessors in interest contained a forum selection clause that selected the state or federal courts in the northern district of Georgia as the appropriate forum for any litigation.  Doc. No. 84 at 7.  Section 1408 of Title 28 of the United States Code governs venue in cases brought under the Bankruptcy Code and provides:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
>
>> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

MEMORANDUM OF DECISION - 14

> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

The District Court for the Southern District of California addressed enforceability of forum selection clauses in adversary proceedings in *Diaz-Barba v. Kismet Acquisition, LLC*, 2010 WL 2079738, at *11 (S.D. Cal. May 20, 2010):

> Forum-selection clauses should not be enforced if litigation in the selected forum would be "seriously inconvenient" or if their enforcement would violate a strong public policy of the forum in which the suit is brought. *Bremen,* 407 U.S. at 12–18.  Public policy strongly favors centralization of core bankruptcy proceedings.  *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.),* 221 B.R. 609, 621–22 (Bankr. D. Mass. 1998) (*see* listed cases holding same); *Official Comm. of Unsecured Creditors v. Transpacific Corp. (In re Commodore Int'l, Ltd.),* 242 B.R. 243, 261 (Bankr. S.D.N.Y. 1999), *aff'd on other grounds,* 2000 WL 977681 (S.D.N.Y. July 17, 2000) (*see* listed cases).  And the Avoidance and Recovery Action are core proceedings.  28 U.S.C. § 157(b)(2)(F), (H).
>
> Here, the *Bremen* factors weigh against enforcing the forum selection clause because the avoidance recovery actions are core proceedings.  There is a strong public policy favoring consolidating these core proceedings in the bankruptcy court.  *E.g., In re N. Parent,* 221 B.R. at 621–22.  Based on this strong public policy alone, the bankruptcy court did not abuse its discretion in declining to enforce the forum selection clause.

The court in *Diaz-Barba* reasoned further: "the forum selection clauses are not binding on Appellee.  This is because Appellee, standing in the shoes of the trustee as plaintiff in the avoidance and recovery actions, is not in privity with Debtors or Appellants."  (citing *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 705 (6th Cir. 1999)).

Here, the U.S. Bankruptcy Court for the District of Montana is the proper venue as Debtor is an LLC registered in Montana and this proceeding arises out of Debtor's bankruptcy.  Enforcement of the forum selection clauses recited in Defendant's motion would cut against the "strong public policy favoring consolidating these core proceedings

in the bankruptcy court." *Diaz-Barba*, 2010 WL 2079738, at *11.  Further, Trustee is not

in privity with Debtor or Defendant with respect to the underlying agreements.  *Fordu,*

201 F.3d at 705.  Rather, Trustee merely invokes his power to avoid allegedly

preferential transfers.  This Court declines to enforce the forum selection clause given

these authorities, and will deny Defendant's motion to dismiss for improper venue under

Civil Rule 12(b)(3).

### 3.  Civil Rule 12(b)(6)—Failure to State a Claim

The standard for a motion to dismiss for failure to state a claim for which relief

may be granted under Civil Rule 12(b)(6) has been summarized as follows:

> Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule
> 7012(b), governs motions to dismiss for failure to state a claim.  The purpose
> of such a motion is to "test a claim's legal sufficiency."  *Beach v. Bank of
> Am. (In re Beach),* 447 B.R. 313, 318 (Bankr.D.Idaho 2011) (citing *Navarro
> v. Block,* 250 F.3d 729, 732 (9th Cir.2001)).  To survive a Rule 12(b)(6)
> motion, a complaint must plead sufficient facts, which when accepted as true,
> support a claim that is "plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S.
> 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v.
> Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  A
> claim has facial plausibility when the facts pleaded allow the Court to "draw
> the reasonable inference that the defendant is liable for the misconduct
> alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  But the
> "plausibility standard . . . asks for more than the sheer possibility that a
> defendant has acted unlawfully." *Id.*
>
> In judging the adequacy of Trustee's amended complaint, the Court may rely
> upon its judicial experience and common sense.  *Id.* at 679, 129 S.Ct. 1937.
> Generally, the Court must assume the veracity of all well-pled factual
> allegations in the complaint; however, the Supreme Court has made it clear
> that the Court need not do the same for legal conclusions couched as factual
> allegations.  *Id.* at 678–79, 129 S.Ct. 1937.  (citing *Twombly* 550 U.S. at 555,
> 127 S.Ct. 1955).  Ultimately, "a plaintiff's obligation to provide the grounds
> of his entitlement to relief requires more than labels and conclusions, and a
> formulaic recitation of the elements will not do."  *Twombly,* 550 U.S. at 555,
> 127 S.Ct. 1955 (citations omitted).  And, "[w]here a complaint pleads facts

that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

*In re Hoku Corp.,* 554 B.R. 901, 910–11 (Bankr. D. Idaho 2016); *see also Samson v. Rocky Mountain Recreational Cmtys, LLC (In re Rocky Mountain Recreational Communities, LLC),* 2012 WL 5248480, *3–4 (Bankr. D. Mont. Oct. 23, 2012).

### a.    Count I—Choice of Law

Defendant contends that Count I of the FAC—seeking declaratory judgment that the promissory notes at issue are governed by Montana and Idaho law—should be dismissed because the relevant loans contain a choice of law provision which states that Georgia law will apply.  Doc. No. 84 at 13.  Trustee counters that he pled sufficient factual allegations to survive a motion to dismiss.  Doc. No. 98 at 10–11.  Trustee's position is correct because this Court must take the allegations in the complaint as true at the motion to dismiss stage.[12]

---

[12] The Court has noted that choice of law provisions are not automatically enforceable, and the Court is not always bound by such choice of law provisions.  *Foster v. EBF Partners, LLC (In re Shoot the Moon, LLC),* 2018 WL 6192204, *2–3 (Bankr. D. Mont. Nov. 8, 2018).  *In EBF Partners,* this Court considered a choice of law provision selecting Florida law:

> In non-bankruptcy cases, federal courts sitting in diversity apply the choice of law rules of the state in which they sit.  *Alaska Airlines, Inc. v. United Airlines, Inc.,* 902 F.2d 1400, 1402 (9th Cir. 1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) ); *see also Van Gundy v. P.T. Freeport Indonesia,* 50 F.Supp. 2d 993, 996 (D. Mont. 1999) ("A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state's substantive law applies.").  However, "'[i]n federal question cases with exclusive jurisdiction in federal court, such as bankruptcy' . . . we apply federal choice of law rules." *First Comm. Bank v. Gaughan (In re Miller),* 853 F.3d 508, 515–16 (9th Cir. 2017) (quoting *In re Lindsay,* 59 F.3d 942, 948 (9th Cir. 1995) ).  Thus, even though Montana is the "forum" state, this Court must examine federal law to determine which state's laws should be applied in this adversary proceeding.

(Continued)

MEMORANDUM OF DECISION - 17

Here, Trustee alleged in the FAC:

19. One of the alternative forms of financing was to seek financing from Defendant. Defendant entered into multiple contracts with certain Shoot the Moon Entities. Based on information and belief, Defendant entered into four (4) separate contracts with Shoot the Moon Entities (the "Contracts"). The terms of the Contracts were part of a standard-form contract prepared by Defendant.

20. On or about December 1, 2014, Defendant entered into a Contract with Shoot the Moon of Idaho, LLC, an Idaho limited liability company. At the time this Contract was entered into, Shoot the Moon of Idaho, LLC was insolvent and never regained its solvency prior to merger or the Petition Date.

21. On or about December 9, 2014, Defendant entered into a Contract with Shoot the Moon 22, LLC, a Montana limited liability company. At the time this Contract was entered into, Shoot the Moon 22, LLC was insolvent and never regained its solvency prior to merger or the Petition Date.

---

Federal choice of law rules are based on the Restatement (Second) of Conflict of Laws. *Id.* at 516 (citing *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2001)). Montana state courts have also expressly adopted various provisions of the federal common law, including the Restatement (Second) of Conflict of Laws § 187(2) to evaluate choice of law provisions in contracts. *Casarotto v. Lombardi*, 886 P.2d 931, 934 (Mont. 1994), *rev'd on other grounds, Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996). After *Casarotto*, the Montana Supreme Court laid out a three-prong framework for evaluating parties' contractual choice of law provisions under the Restatement:

Section 187 provides that we will apply the "law of the state chosen by the parties to govern their contractual rights" unless the following three factors, as restated by this Court, are met:

> (1) but for the choice of law provision, Montana law would apply under § 188 of the Restatement; (2) Montana has a materially greater interest in the particular issue than the parties' chosen state; and (3) application of the chosen state's law would contravene a Montana fundamental policy.

*Masters Grp. Int'l, Inc. v. Comerica Bank*, 352 P.3d 1101, 1113 (Mont. 2015) (quoting *Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476, 480 (Mont. 2008)). As this Court also applies the Restatement, such a test is equally applicable here. And in applying the test to the instant case, Florida law will govern unless (1) Montana or Washington law would apply under § 188 in the absence of the parties' choice of law provision, (2) Montana or Washington has a materially greater interest in the issue than Florida, and (3) the application of Florida law would contravene a fundamental public policy of Montana or Washington.

*Id.*

MEMORANDUM OF DECISION - 18

22. On or about January 20, 2015, Defendant entered into a Contract with Shoot the Moon II, LLC, a Montana limited liability company.  At the time this Contract was entered into, Shoot the Moon II, LLC was insolvent and never regained its solvency prior to merger or the Petition Date.

23. On January 30, 2015, Defendant entered into a Contract with Shoot the Moon III, LLC, a Montana limited liability company.  At the time this Contract was entered into, Shoot the Moon III, LLC was insolvent and never regained its solvency prior to merger or the Petition Date.

24. In addition to each of the loans setting forth a usurious interest rate, those certain Shoot the Moon Entities were required to pay processing fees and other expenses which are, in substance, additional interest under Defendant's loans.

25. Despite the provisions within the Contracts to the contrary, the Contracts are to be governed and construed by the laws of the states of Montana and Idaho.

. . .

28. During the term of the loans, Defendant did business with certain Shoot the Moon Entities in the states of Montana and Idaho.

. . .

30. Montana law should apply to Defendant's Contracts with Shoot the Moon 22, LLC, Shoot the Moon II, LLC, and Shoot the Moon III, LLC. Defendant's Contracts with Shoot the Moon 22, LLC, Shoot the Moon II, LLC, and Shoot the Moon III, LLC were negotiated and formed in Montana and the accounts receivable, which were the consideration for Defendant's loans, were generated in Montana.  In addition, Shoot the Moon 22, LLC, Shoot the Moon II, LLC, and Shoot the Moon III, LLC were organized and existing under the laws of Montana.

31. Idaho law should apply to Defendant's Contract with Shoot the Moon of Idaho, LLC.  Shoot the Moon of Idaho, LLC was organized and existing under the laws of Idaho.  In addition, Shoot the Moon of Idaho, LLC's accounts receivable, which was the consideration for Defendant's loan, was generated in Idaho.

Doc. No. 66 at 5–7.

Taking the factual allegations recited above as true, Trustee alleges sufficient facts to "state a claim to relief that is plausible on its face." There are enough facts for Trustee to make an argument that Montana and Idaho law should apply despite the choice of law provisions. Here, the Court need not finally determine whether Georgia, Montana, and/or Idaho law applies but merely whether sufficient facts have been pled to make the claim plausible on its face. Thus, Defendant's motion as to Count I of the FAC will be denied.

### b.    Count II—Declaratory Judgment that Contracts are Loans

Defendant argues Count II should be dismissed under Civil Rule 12(b)(6) because the "language of the Notes establish they are promissory notes . . . as unconditional promises to pay IOU. . . . [and] Debtor was never a party to the Notes."[13]  To the extent this argument is based on the holding in *Dawson Farms*, this Court has already discussed the issues presented therein, and concluded that the merger of entities under Montana and Idaho law result in a vesting of the rights of the merged entities. Further, Trustee has alleged sufficient facts to state a plausible claim that these agreements were loans. *See generally* Doc. No. 66 at 7–9. Therefore, the Court will deny Defendant's motion to dismiss Count II of the FAC.

### c.    Count III—Sections 547 & 550

Defendant argues, that "the Complaint never alleges Debtor or Plaintiff owed or paid any debt to IOU." Doc. No. 84 at 24. Defendant's position is wholly based on the holding of *Dawson Farms*. As discussed above, the Court concludes the merger of

---

[13] Defendant also makes a standing argument which has been addressed by the Civil Rule 12(b)(1) discussion *supra*.

MEMORANDUM OF DECISION - 20

entities under Montana and Idaho law result in a vesting of the rights of the merged

entities.

Here, the FAC asserts:

10. On the eve of the bankruptcy, October 20, 2015, Articles of Merger were filed with Washington and Montana and Statements of Merger were filed with Idaho, which merged the following nineteen (19) entities: Shoot the Moon, LLC; Shoot the Moon X, LLC; Shoot the Moon X Realty, LLC; Shoot the Moon Realty, LLC; Shoot the Moon of Washington; Shoot the Moon of Nampa, LLC; Shoot the Moon of Montana, LLC; Shoot the Moon of Montana Realty, LLC; Shoot the Moon of Idaho, LLC; Shoot the Moon of Billings, LLC; Shoot the Moon III, LLC; Shoot the Moon II, LLC; Shoot the Moon II Realty, LLC; Shoot the Moon II of Idaho, LLC; Shoot the Moon Grizzly, LLC; Shoot the Moon Enterprises, LLC; Shoot the Moon 5, LLC; Shoot the Moon 4, LLC; Shoot the Moon 22, LLC (collectively the "Shoot the Moon Entities"). Also, on October 20, 2015, Agreement and Plan of Mergers were executed for each of the Shoot the Moon Entities, providing the terms and conditions of the merger. Upon merger, Shoot the Moon, LLC ("Debtor"), a Montana limited liability company, became the sole surviving entity.

11. As relevant to this case, Articles of Merger are attached hereto for: (1) Shoot the Moon of Idaho, LLC (attached as Exh. "A"); (2) Shoot the Moon 22, LLC (attached as Exh. "B"); (3) Shoot the Moon II, LLC (attached as Exh. "C"); and (4) Shoot the Moon III, LLC (attached as Exh. "D").

12. As relevant to this case, Agreements and Plans of Mergers/Statement of Merger are attached for: (1) Shoot the Moon of Idaho, LLC (attached as Exh. "E"); (2) Shoot the Moon 22, LLC (attached as Exh. "F"); (3) Shoot the Moon II, LLC (attached as Exh. "G"); and (4) Shoot the Moon III, LLC (attached as Exh. "H"). The terms and conditions within each Agreement and Plan of Merger are the same.

13. Term and Condition 5(e) in each Agreement and Plan of Merger, for the Montana entities, provides:

> From and after the Effective Date of the merger, the Surviving Company shall possess all the rights, privileges, immunities, and franchises of a public or private nature, of each of the Merging Companies; and all property real or personal, and all debts due on whatever account of or belonging to or due to each of the Merging Companies shall be taken and deemed to

be transferred to and vested in the Surviving Company without further act or deed; and title to any real estate or interest therein, vested in any of the Merging Companies shall not revert or be impaired by reason of this merger. Surviving Company shall be responsible and liable for all the liabilities and obligations of each of the Merging Companies, and any claim existing or action or proceeding pending by or against any of the Constituent Companies may be prosecuted to judgment as if the merger had not taken place or the Surviving Company may be substituted in its place, and neither the rights of creditors nor any liens upon the property of any of the Constituent Companies shall be impaired by this Merger.

14. Accordingly, pursuant to each Agreement and Plan of Merger/Statement of Merger, all rights, privileges, immunities, franchises, real and personal property, and other assets were deemed to be transferred to and vested in Debtor, as the surviving entity.

. . .

40. Prior to the Petition Date, certain Shoot the Moon Entities transacted business with the Defendants on account of which the Shoot the Moon Entities were indebted to the Defendants.

41. Those certain Shoot the Moon Entities made payments to the Defendants or for the benefit of Defendants during the Preference Period.

Doc. No. 66 at 3–4, 9. These allegations are sufficient to raise a plausible claim that Debtor, as a result of its existence as the successor entity, had an antecedent debt and transferred sums on said debt. Thus, under the Civil Rule 12(b)(6) standard, Trustee's FAC survives the motion to dismiss, and the Court will deny Defendant's motion.

### d.   Count IV—Usury

Defendant contends Count IV should be dismissed because "Count IV which seeks damages for alleged usury under Montana Law, inapplicable to the Loans that IOU closed with Shoot the Moon 22 LLC [STM22] [of Washington State] and Shoot the Moon III LLC [STM3] [of Idaho] which are clearly not subject to Montana law." Doc.

No. 84 at 17.[14]  Defendant's position must be rejected.  Under Count IV, Trustee alleged:

"Those certain Contracts were entered into with *Montana* entities, including Shoot the Moon 22, LLC, Shoot the Moon II, LLC and Shoot the Moon III, LLC, therefore subjecting them to Montana law."  Doc. No. 66 at 10–11 (emphasis added).  Taking the allegations in the complaint as true, as is required under Civil Rule 12(b)(6), these entities are assumed to be Montana entities.  Thus, Defendant's motion to dismiss Count IV must be denied.

**CONCLUSION**

In sum, Defendant's Motion is properly before the Court as Defendant did not waive the 12(b) defenses raised in its motion.  The Court concludes under Civil Rule 12(b)(1) and (3) Trustee has standing, the Court has subject matter jurisdiction over this action, and venue is proper.  Further, the Court finds Defendant's Motion under Civil Rule 12(b)(6) is not well taken.  Therefore, Defendant's Motion will be denied.

The Court will enter an appropriate order.

DATED:  May 21, 2020

TERRY L. MYERS
U.S. BANKRUPTCY JUDGE

---

[14] Defendant also makes a standing argument which has been addressed in the Civil Rule 12(b)(1) discussion *supra*.

MEMORANDUM OF DECISION - 23